UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JOSE A. MURILLO EID and KRISTINA
MURILLO EID, individually and as parents
and natural guardians for their minor
children, J.A.M., Ja.A.M., Jo.A.M., and
I.A.M.,

    Plaintiffs,

v.                                      Case No. 8:24-cv-1544-TPB-AAS

MICHAELS MANAGEMENT
SERVICES, LLC,

    Defendant.
_____/

## ORDER GRANTING IN PART AND DENYING IN PART "DEFENDANT'S MOTION TO DISMISS COMPLAINT"

This matter is before the Court on "Defendant's Motion to Dismiss Complaint," filed on September 23, 2024. (Doc. 24). On October 21, 2024, Plaintiffs filed a response. (Doc. 29). The Court held a hearing on January 28, 2025, to discuss this and other matters. *See* (Doc. 47). After reviewing the motion, response, court file, and the record, the Court finds as follows:

## Background[1]

Plaintiffs Jose and Kristina Murillo Eid are husband and wife and parents to four minor children. The family of six lived in military family housing on MacDill Air Force Base ("MacDill") in Tampa, Florida, from January 2019 to August 2021. Defendant Michaels Management Services, LLC, is a New Jersey limited liability company that was the property manager for Plaintiffs' residence at MacDill.

Plaintiffs, on behalf of themselves and their children, allege that they were injured by "mold and micro-bacteria contamination" because of Defendant's failure to properly maintain the residence at MacDill. Specifically, Plaintiffs allege that Defendant failed to repair leaks, HVAC equipment, and other defects that allowed water (and eventually mold) to accumulate inside the residence. Plaintiffs vacated the residence on August 11, 2021, due to "unsafe and adverse health conditions" caused by exposure to mold.

On May 24, 2024, Plaintiffs filed a lawsuit in state court, which was removed to this Court by a since-terminated defendant, The Michaels Organization, LLC, on June 26, 2024. (Docs. 1; 1-1). On September 9, 2024, Plaintiffs filed an amended complaint naming Defendant and bringing claims for breach of contract (Count I), breach of implied warranty of habitability (Count II), and negligence (Counts III-

---

[1] The Court accepts as true the facts alleged in Plaintiffs' amended complaint for purposes of ruling on the pending motion to dismiss. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint."). The Court is not required to accept as true any legal conclusions couched as factual allegations. *See Papasan v. Allain*, 478 U.S. 265, 286 (1986).

VIII). (Doc. 23). Defendant responded by filing the present motion to dismiss, seeking dismissal of all counts. (Doc. 24).

## Legal Standard

Federal Rule of Civil Procedure 8(a) requires that a complaint contain "a short and plain statement of the claim showing the [plaintiff] is entitled to relief." Fed. R. Civ. P. 8(a). While Rule 8(a) does not demand "detailed factual allegations," it does require "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In order to survive a motion to dismiss, factual allegations must be sufficient "to state a claim to relief that is plausible on its face." *Id.* at 570.

When deciding a Rule 12(b)(6) motion, review is generally limited to the four corners of the complaint. *Rickman v. Precisionaire, Inc.*, 902 F. Supp. 232, 233 (M.D. Fla. 1995). Furthermore, when reviewing a complaint for facial sufficiency, a court "must accept [a] [p]laintiff's well pleaded facts as true, and construe the [c]omplaint in the light most favorable to the [p]laintiff." *Id.* (citing *Scheuer v. Rhodes*, 41 U.S. 232, 236 (1974)). "[A] motion to dismiss should concern only the complaint's legal sufficiency, and is not a procedure for resolving factual questions or addressing the merits of the case." *Am. Int'l Specialty Lines Ins. Co. v. Mosaic Fertilizer, LLC*, 8:09-cv-1264-T-26TGW, 2009 WL 10671157, at *2 (M.D. Fla. Oct. 9, 2009) (Lazzara, J.).

## Analysis

### *Federal Enclave Doctrine*

As an initial matter, Defendant contends that the "federal enclave doctrine" precludes Plaintiffs' breach of contract and breach of implied warranty of habitability claims. "The federal enclave doctrine gives Congress the power to 'exercise exclusive Legislation . . . over all Places purchased by the Consent of the Legislature of the State in which the Same shall be, for the Erection of Forts, Magazines, Arsenals, dock-Yards, and other needful Buildings.'" *King v. Akima Global Servs., LLC*, 775 F. App'x 617, 620 (11th Cir. 2019) (quoting U.S. Const. art. I, § 8, cl. 17). Notwithstanding this exclusive federal legislative authority, "when an area in a State becomes a federal enclave, 'only the [state] law in effect at the time of the transfer of jurisdiction continues in force' as surrogate federal law." *Parker Drilling Mgmt. Servs., Ltd. v. Newton*, 587 U.S. 601, 621 (2019) (quoting *James Stewart & Co. v. Sadrakula*, 309 U. S. 94, 100 (1940)). "This approach ensures 'that no area however small will be without a developed legal system for private rights,' while simultaneously retaining the primacy of federal law and requiring future statutory changes to be made by Congress." *Id.* at 612 (quoting *James Stewart & Co.*, 309 U.S. at 100). There are three exceptions to the general rule that state law as of the date of cession applies within the federal enclave: "(1) where Congress has, by statute, provided a different rule; (2) where the state explicitly retained the right to legislate over specific matters at the time of cession; and (3) where minor

regulatory changes modify laws existing at the time of cession." *Allison v. Boeing Laser Tech. Servs.*, 689 F.3d 1234, 1237 (10th Cir. 2012).

Here, there is no dispute that Florida validly ceded MacDill to the United States in 1950. *See* (Docs. 24-2; 24-3); *United States v. Boling*, No. 8:19-cr-518-T-36JSS, 2020 WL 1931328 (M.D. Fla. Apr. 2, 2020), *report and recommendation adopted*, 2020 WL 1929465 (M.D. Fla. Apr. 21, 2020) (recognizing MacDill as a federal enclave). And neither party contends that any of the recognized exceptions to the federal enclave doctrine apply in this case. Plaintiffs appear to argue that there is an additional exception whenever parties contractually agree that modern state law will control through a choice-of-law provision, relying on *Johnson v. Lendlease (US) Pub. Partnerships LLC*, No. 7:21-CV-188-D, 2022 WL2447091 (E.D. N.C. July 5, 2022). But *Johnson* cites to no convincing authority to support that proposition, and its holding has been subsequently criticized by at least one other court. *See, e.g., Fischer v. Fort Belvoir Residential Cmtys. LLC,* No. 122CV286RDALRV, 2024 WL 666067 (E.D. Va. Feb. 16, 2024) (disagreeing with *Johnson* that a choice-of-law provision could "effectively abrogate the federal enclave doctrine."). Even assuming a choice-of-law provision could abrogate the application of the federal enclave doctrine, the provision identified here does not do so. By its terms, it provides only that Florida law governs; it does not limit the governing Florida law to the law in place at the time the lease was signed as

opposed to the date of cession.[2]  Therefore, to the extent state law is to be applied to events occurring on MacDill, it is Florida state law as it existed in 1950, when the transfer of jurisdiction took place.  *See King*, 775 F. App'x at 621.

### *Count I: Breach of Contract*

While Defendant admits that breach of contract was a valid cause of action at the time of cession, it argues that 1950 Florida law also "included specific pleading standards and requirements that are not met in the instant action."  Specifically, Defendant contends that recovery for breach of contract was possible in 1950 only to the extent that the contract terms specified performance and the defendant thereafter "committed an overt act" in breach of a material term of the contract.  To support this proposition, Defendant cites to § 697.01, *F.S.* (1941), and *Bennett v. Orange State Oil Co.,* 31 So. 2d 921 (Fla. 1947).  The Court is unpersuaded by these authorities.  Section 697.01, *F.S.* (1941), titled "Instruments deemed mortgages," has no bearing on how breach of contract clams must be pled.  The same is true of *Bennett*, which does not articulate a standard for breach of contract claims or discuss pleading requirements generally.  That case merely considered whether affirmative counter relief could be asserted with respect to unlawful detainer proceedings for nonpayment of rent as required in a lease.  *Bennett*, 31 So. 2d at 922.

---

[2] The provision reads: "This Agreement and the rights of the Parties hereunder will be interpreted in accordance with the laws of the State of Florida, and all rights and remedies will be governed by such laws without regard to principles of conflict of laws."

Defendant also argues that 1950 Florida law limited recovery of damages to an amount equivalent to reimbursement of the unfulfilled contract, citing to *Hanley v. Gables Trust Co.*, 3 So.2d 725 (Fla. 1941). But *Hanley* held only that the measure of damages under the contract at issue in that case was fixed by a specific provision limiting damages to "all moneys that may have been paid . . . under the contract" if title was not "made good and marketable within a reasonable time." *Id.* at 748-49. There is no such provision here. Accordingly, the amended complaint sufficiently pleads a breach of contract claim and Defendant's motion to dismiss is denied as to Count I. [3]

### *Count II: Breach of Implied Warranty of Habitability*

In the amended complaint, Plaintiffs allege that a breach of the implied warranty of habitability occurred because, under § 83.51, *F.S.*, Defendant failed to "properly inspect the Subject Residence and properly repair leaks, fix HVAC equipment and remedy other defects that resulted in the growth of mold and micro-bacteria so as to make the house not habitable for Plaintiffs' occupation." Defendant argues the claim must be dismissed because § 83.51, *F.S.* – a 1974 statute covering a "Landlord's obligation to maintain premises" – was enacted long after the 1950 cutoff.

---

[3] The Court notes that Defendant also raises whether it is a proper party to a breach of contract action since it does not own the residence and only signed the lease on behalf of the apparent owner and landlord, "AMC East Communities, LLC." At the motion hearing, the parties explained that Defendant had either acquired AMC or merged with AMC, but that the precise details concerning that transaction were unknown to the parties. The Court therefore refrains from determining whether Defendant is the proper party to a contractual breach claim.

The Court agrees with Defendant that Count II is precluded by the federal enclave doctrine. "[L]aws of the state adopted after the cession are without any force or effect on the federal enclave." *James Stewart & Co.*, 309 U.S. at 99-100. Here, § 83.51, *F.S.*, was not enacted into law at the time MacDill was ceded to the United States, so any claims for purported violations of the duties imposed by the statute cannot be properly brought. *See, e.g., Booker v. Doyon Sec. Servs., LLC*, No. 16-24146-CIV, 2017 WL 5202682, at *5 (S.D. Fla. Jan. 20, 2017) (dismissing claim under the Florida Civil Rights Act, which was adopted in 1992, "well after" Krome Detention center had been ceded to the Federal Government).

To the extent Plaintiffs seek to bring an implied warranty action not based on the statute, it was not until at least 1970 that an implied warranty of habitability was recognized as a general matter. *See Javins v. First Nat. Realty Corp.*, 428 F.2d 1071, 1075-76 (D.C. Cir. 1970). Indeed, prior to 1967, express disclaimers excluding implied warranties were given full effect in Florida. *See, e.g., Rozen v. Chrysler Corp.*, 142 So. 2d 735 (Fla. 3d DCA 1962). Florida likewise had no minimum building code before 1974. *See* § 553.73, *F.S.* For these reasons, the Court agrees with Defendant that Plaintiffs' claim for breach of implied warranty of habitability is precluded by the federal enclave doctrine.[4]

---

[4] Defendant also contends that entitlement to prejudgment interest and attorney's fees is unavailable since Florida law did not recognize recovery for those things for claims sounding in negligence and contract until 1995. The Court refrains from deciding that issue until a later stage in the litigation.

*Counts III-VIII: Negligence*

Finally, Defendant argues that Plaintiffs' negligence claims are barred by the statute of limitations, § 95.11(5)(a), *F.S.* (2023), which provides that claims based on negligence must be brought within two years.[5] Defendant explains that the events alleged in this case occurred between January 1, 2019, and August 11, 2021, but that the complaint was not filed in state court until May 24, 2024 – "more than two years after the latest-occurring event alleged by Plaintiffs."

However, prior to March 24, 2023, actions based on negligence could be filed within four years. *See* Ch. 2023-15, § 3, Laws of Fla. (2023). It was not until the Governor signed into law HB 837, a wide-ranging tort reform bill, that the two-year limitation began to take effect. Defendant points to Section 30 of HB 837, which specifies that "[e]xcept as otherwise expressly provided in this act, this act shall apply to causes of action *filed after* March 24, 2023." (emphasis added). Defendant thus argues that the Legislature expressly intended the two-year limitation to apply to lawsuits like the present one, which was not filed until 2024.

The problem for Defendant, however, is that HB 837 *does* "otherwise expressly provide" with respect to the law's amendments to § 95.11. Section 28 of HB 837 states that "[t]he amendments made by this act to [the statutes of limitations found under § 95.11] apply to causes of action *accruing after the effective*

---

[5] It is unclear why Defendant, having argued that the federal enclave doctrine requires application of Florida law as it existed prior to 1950, asks the Court to apply the Florida statute of limitations enacted in 2023. Perhaps Defendant believes that statutes of limitations are exempt from the federal enclave doctrine, but Defendant has offered no argument on this point.

*date of this act.*" (emphasis added).  Consequently, the Legislature intended that the date the cause of action accrued – as opposed to the date that a suit is filed – controls whether the amendments to § 95.11 apply.  *See also Williams v. Home Advantage Humana*, No. 8:23-cv-980-CEH-AAS, 2023 WL 4104520, at *1 n.3 (M.D. Fla. May 31, 2023) ("[T]he [statute of limitations] amendment is inapplicable to this action because Plaintiff's claims *accrued* in 2018, well before the effective date of the amendment.") (emphasis added).  There is a "presumption [] against retroactive application of a statute where the Legislature has not expressly in clear and explicit language expressed an intention that the statute be so applied . . . ." *Foley v. Morris*, 339 So. 2d 215, 216 (Fla. 1976).  Here, there is no evidence that the Legislature intended HB 837 to apply retroactively; indeed, it expressly provided to the contrary.

Defendant alternatively argues that, even assuming the four-year limitation applies, Plaintiffs' negligence claims are time barred because a medical provider referred Plaintiffs' children to an off-base ENT specialist on January 8, 2020, after Plaintiffs had apparently identified mold at the residence.  Defendant explains that the medical provider's letter referencing the referral was exchanged with Defendant's counsel in March 2023 as part of Plaintiffs' pre-suit notice.

This ground for dismissal must also be rejected.  "[T]he Court is limited to the four corners of the complaint and documents attached thereto." *Mockingbird 38, LLC v. Petaxxon USA LLC*, No. 6:21-cv-22-GAP-GJK, 2021 WL 2954307 (M.D. Fla. Mar. 18, 2021).  Thus, when considering a Rule 12(b)(6) motion to dismiss, courts

"generally may not consider matters outside of the pleadings without treating the motion as a motion for summary judgment, and if it treats the motion as one for summary judgment, the court must give a reasonable opportunity for the parties to present all evidence relevant to the motion." *Johnson v. City of Atlanta*, 107 F.4th 1292, 1298 (11th Cir. 2024).  "Accordingly, when resolving a motion to dismiss or a motion for judgment on the pleadings, a court may properly consider a document not referred to or attached to a complaint under the incorporation-by-reference doctrine if the document is (1) central to the plaintiff's claims; and (2) undisputed, meaning that its authenticity is not challenged." *Id.* at 1300.[6]  Plaintiffs do not dispute the authenticity of the letter but contend that it is not central to the claims alleged.

"A document is 'central to the complaint' if it is necessary to establish the plaintiff's claims." *Nipro Corp. v. Verner*, No. 19-62121-CIV, 2023 WL 8831377 (S.D. Fla. Dec. 21, 2023); *see Roberts v. Carnival Corp.*, 824 F. App'x 825, 826 (11th Cir. 2020) (passenger's cruise ticket contract was "not central to her claims because it [was] not a necessary or essential part of [her] effort to show that she was injured due to Carnival's negligence.").  Here, the time that mold was discovered and connected to injuries alleged by Plaintiffs is only central to the affirmative defense that the claims are time-barred – not to making out a claim of negligence.  *See Roberts*, 824 F. at 827 ("A statute of limitations bar is an affirmative defense, and

---

[6] The Eleventh Circuit further explained in *Johnson* that there was some conflicting authority on whether a complaint must also explicitly reference a document for it to be considered under the incorporation-by-reference doctrine.  107 F.4th at 1300 n.6.  The court indicated that no such reference was required.  *Id.*

plaintiffs are not required to negate an affirmative defense in their complaint."). The provider's letter referencing the referral date for one of Plaintiffs' children is not germane to establishing a prima facie claim of negligence, and the Court therefore denies this basis for dismissal. Moreover, even if attachments to the pre-suit notice were considered, there remains genuine issues of fact as to when the cause of action actually accrued for Plaintiffs.

Accordingly, it is

**ORDERED**, **ADJUDGED**, and **DECREED**:

1. "Defendant's Motion to Dismiss Complaint" (Doc. 24) is **GRANTED IN PART** and **DENIED IN PART**.
2. The motion is **GRANTED** to the extent that Count II is **DISMISSED WITH PREJUDICE**.
3. The motion is otherwise **DENIED**.
4. Defendant Michaels Management Services, LLC, is directed to file an answer to the amended complaint on or before April 10, 2025.

**DONE** and **ORDERED** in Chambers, in Tampa, Florida, this 26th day of March, 2025.

TOM BARBER
UNITED STATES DISTRICT JUDGE